UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOR RONLAKE, and PAULA RONLAKE<br><br>    Plaintiffs,<br><br>      v.<br><br>US-REPORTS, INC., a Colorado Corporation, and GROUP MANAGEMENT 0002 LLC, a New York limited liability company, and DOES 1 through 20, exclusive,<br><br>    Defendant. | 1:11-CV-02009 LJO MJS<br><br>ORDER RE DEFENDANT'S MOTION TO DISMISS COMPLAINT (DOC. 7) |

I. INTRODUCTION.[1]

Defendant Group Management 0002 LLC ("GM2") filed this motion to dismiss Thor and Paula Ronlake's ("Plaintiffs") Complaint asserting that a forum selection clause contained in the parties' operating agreement mandates that this action be heard by the state or federal courts of Erie County, New York. Plaintiffs contend that the forum selection clause cannot be enforced because it does not apply to Plaintiffs claims; Plaintiffs had no notice of the clause; enforcement will deprive them of their day in court; and enforcement would be contrary to public policy.

---

[1] Because oral argument is not of material assistance, the Court orders these matters submitted on the briefs. E.D. Cal. L. R. 230 (g).

1

## II. BACKGROUND.

In approximately 1999, Thor Ronklae was hired as an inspector by US-Reports, Inc.

Compl. ¶3. Paula Ronlake was hire approximately two years later. *Id.*

In approximately July of 2007, Plaintiffs were advised that their business relationship with US-Reporter would change. *Id* at ¶ 4. Plaintiffs allege that only the outward appearance of the relationship changed, in that they were now referred to as "partners" and/or "members" of the entity GM2. *Id.*; Declaration of Thor Ronlake ¶ 3. However, they assert their relationship with US-Reports did not substantially change. *Id.* US-Reports continued to supervise and control the manner in which Plaintiffs performed their services, while GM2 acted as a payroll company, dispersing money received form US-Reports to Plaintiffs. *Id.*

Defendant states that as a result of the change, an operating agreement ("Operating Agreement") was created which governed the parties' new relationship. Declaration of John Schober, Exs. 1, 2. Defendant asserts that Plaintiffs are subject to the Operating Agreement and all its clauses. The Operating Agreement contains a forum selection clause which states in relevant part:

11.5 Governing Law and Consent to Jurisdiction

This Agreement and all issues regarding the rights and obligations of the Members, the construction, enforcement and interpretation hereof, and the formation, administration and termination of the Company shall be governed by the provisions of the law in New York, without reference to conflict of laws principles. *The Company and each Member irrevocably submit to the exclusive jurisdiction of the Federal and state courts located in Erie County, New York, for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby.*

*Id.* (emphasis added). Defendant also provides signed, written notes from a meeting ("Meeting Notes") in which Plaintiffs agreed to become partners in GM2 as well as signed amendments to the Operating Agreement. *Id.,* Exs. 3-6.

Plaintiffs allege they were never provided with nor signed any operating agreement.

1    Further, while Plaintiffs admit to signing the Meeting Notes and being sent a "Member

2    Declaration and Acknowledgment" document, neither of these documents contained or mentioned

3    the Operating Agreement or a forum selection clause.

4

5                                III. LEGAL STANDARD.

6            A motion to enforce a forum selection clause is treated as a motion to dismiss for

7    improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *Kukje Hwajae Ins. Co., Ltd.*

8    *v. M/V Hyundai Liberty*, 294 F.3d 1171, 1174 (9th Cir.2002), vacated on other grounds, 543 U.S.

9    985 (2004). Consequently, the pleadings need not be accepted as true, and facts outside the

10   pleadings properly may be considered. *Id.* Nonetheless, the trial court must draw all reasonable

11   inferences and resolve all factual conflicts in favor of the non-moving party. *Murphy v. Schneider*

12   *Nat'l, Inc.* 362 F.3d 1133, 1138 (9th Cir. 2004). The enforceability of the forum selection clause

13   is determined according to federal law. *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th

14   Cir. 1996).

15

16

17                                IV. DISCUSSION.[2]

18   A.      Is the Forum Selection Clause Enforceable?

19           "A forum selection clause is presumptively valid; the party seeking to avoid a forum

20   selection clause bears a 'heavy burden' to establish a ground" on which a forum selection clause

21   should not be enforced. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009).

22           There are three circumstances under which enforcement of a forum selection clause would

23   be unreasonable: "(1) if the inclusion of the clause in the agreement was the product of fraud or

24   overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his

25

26

27   _____

28   [2] Plaintiffs' extensive argument regarding transfer is not applicable here as Defendant has not requested a transfer; rather, Defendant requests dismissal without prejudice. Accordingly, the Court addresses the law and facts relevant to dismissal.

3

1  day in court were the clause enforced; and (3) if enforcement would contravene a strong public

2  policy of the forum in which suit is brought." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 113, 1140

3  (9th Cir. 2004) (internal citations and quotation marks omitted). Forum selection clauses are also

4  scrutinized for "fundamental fairness," and may be deemed unfair if inclusion of the clause was

5  motivated by bad faith, or if the party had no notice of the forum provision. *Carnival Cruise*

6  *Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). "The party challenging the clause bears a 'heavy

7  burden of proof'" *Murphy*, 362 F.3d at 1140 (*quoting The Bremen v. Zapata Off-Shore Co*., 47

8  U.S. 1, 17 (1972)).

9

10          Plaintiffs advance an argument regarding each factor.[3]

11

12          1.      Notice of the Forum Selection Clause.

13          Plaintiffs claim that the first notice they received of the forum selection clause's existence

14  was Defendant's filing of this motion. Since notice of a forum selection clause is a factor in

15  assessing its fundamental fairness, *Carnival Cruise Lines*, 499 U.S. at 595, Plaintiffs contend that

16  the lack of notice renders this clause unfair and unenforceable.

17          Here the Operating Agreements provided by Defendant which contain the forum selection

18  clause show only the signature of "John C. Schober." The Agreements are not signed by

19  Plaintiffs. Schober Decl., Exs. 1, 2. Defendant further offers the Summary of Specific

20  Amendments and Restatements of the Operating Agreement ("Amendments") and notes from a

21  meeting stating that the Ronlake's had become members of GM2. *Id.* at Exs. 3-6. Both documents

22  are signed by Plaintiffs, but neither the Amendments nor the meeting notes make mention of a

23  forum selection clause. *Id.* Accordingly, it is unclear by these documents whether Plaintiffs had

24  actual notice of the forum selection clause. With no evidence to the contrary, the Court must

25

26

27  _____

    [3] Plaintiffs claim inclusion by fraud, but they do not make a particularized showing, as is required. *See Spradlin v.*
28  *Lear Siegler Management Services Co., Inc.*, 926 F.2d 865, 868 (9th Cir. 1991). However, it is of no consequence to
    the determination of this motion as Plaintiffs' other arguments are sufficient to justify denial of Defendant's motion.

believe Plaintiffs allegations at this stage and resolve all questions of fact in their favor. As such, Plaintiffs' allegations weigh in favor of non-enforcement due to unfairness because they were not given notice of the clause.

2.     <u>Plaintiffs Effectively Deprived of Their Day in Court.</u>

Plaintiffs argue that enforcement of the clause would deprive them of their day in court. Plaintiffs are retired people on a fixed income. Opp'n at 15:27-28. They also have a $200,000 debt as a result of Ms. Ronlake's suffering congestive heart failure in October 2010 which left her in a coma for six weeks and the hospital for nine weeks. *Id.* at 15:28-2. Plaintiffs assert they currently have no net assets. *Id.* at 16:2.

Financial hardship, alone, is insufficient to deprive an individual of his day in court. *See Murphy*, 362 F.3d at 1142; *Paster v. Putney Student Travel, Inc.*, 1999 WL 1074120 at *3 (C.D. Cal. June 9, 1999). However, here, Plaintiffs demonstrate financial hardship along with lack of notice which further weighs in favor of non-enforcement.

3.     <u>Public Policy.</u>

This action is brought primarily pursuant to the California Labor Code. To force parties to litigate in a distant forum, which may deprive them of the opportunity to litigate at all and potentially allow Defendant to avoid the California Labor Code, is contrary to the policies sought to be advanced by the Code. Enforcing the forum selection clause in the context of this case would therefore "contravene a strong public policy of the forum in which suit is brought." *Murphy*, 362 F.3d at 1140; *see also Jones v. GNC Franchising, Inc*., 211 F.3d 495 (9th Cir. 2000). "[T]he California Supreme Court has held clearly and unequivocally that it is against the strong public policy of California to enforce a forum selection clause where the practical effect of enforcement will be to deprive a plaintiff or class of plaintiffs of their unwaivable statutory

entitlement to the minimum wage and overtime payments." *Perry V. AT&T Mobility LLC*, No. C

11–01488 SI, 2011 WL 4080625, *5 (N.D. Cal. Sept. 12, 2011) (*citing Gentry v. Superior Court*,

42 Cal. 4th 443 (2007); *see also*, *Quinonez Empire Today, LLC*, No. C 10-02049, 2010 WL

4569873 at *2 (N.D. Cal. Nov. 4, 2010) ("The Ninth Circuit sent a strong message that

contractual schemes to avoid the California Labor Code will not be tolerated." ).

      A determination that New York rather than California law governs Plaintiffs' claims could

well have the serious practical effect of depriving Plaintiffs of their unwaivable statutory

entitlement to minimum wage and overtime payments. For example, Cal. Labor Code § 2802

entitles an employee to reimbursement of expenses incurred on behalf of the employer. *Id.* §

2802(a) ("An employer *shall* indemnify his or her employee for *all* necessary expenditures or

losses incurred by the employee in direct consequence of the discharge of his or her duties")

(emphasis added). New York's Labor Law § 198-c, in contrast, entitles an employee to

reimbursement of expenses only if there is an agreement providing for such reimbursement. *Id.* §

198-c.1 ("any employer who is *party to an agreement* to pay or provide benefits [including

reimbursement for expenses]. . . to employees. . . and who fails. . . to provide such benefits. . .").[4]

      Accordingly, if enforced the forum selection clause may deprive Plaintiffs of their

unwaivable statutory entitlement under the Cal. Labor Code in violation on California public

policy.

B.    <u>Applicability of the Forum Selection Clause.</u>

      In any case, it appears that the forum selection clause does not apply to Plaintiffs' claims

---

[4] Defendant argues that the requirements under these statutes are arguably the same because many California employers have internal policies that require approval before expense are incurred. Defendant's argument misses the mark. It is of no consequence to this inquiry whether many California employers have internal expense polices because those policies could be invalid under California law if they do not indemnify his or her employee for *all* necessary expenditures incurred in performing the job. This is not the case under New York law because employers are only held to any *agreement* they have made regarding expenditures. Accordingly, if this case is heard in New York, Plaintiffs may not receive what they would be entitled to under California law.

because they do not "arise from" the contract; rather, they arise from the alleged wrongful classification of Plaintiffs as non- employees.

The scope of the claims governed by a forum selection clause depends the language used in the clause. Most recently, in *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 2011 WL 3076859 (9th Cir.2011), the Ninth Circuit explained that forum selection clauses using the phrases "arising under" "arising out of" and "arising hereunder" should be "narrowly construed" to encompass disputes "relating to the interpretation and performance of the contract itself," but that the inclusion of the phrase "relating to" should lead to a "broad[er]" interpretation. *Id.* at * 7; *accord, Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463–64 (9th Cir. 1983) (discussing how omission of "relating to" language in an arbitration clause results in a narrower scope of covered disputes). Here, the forum selection clause uses the term "arising out of." Decl. Schober, Ex. 1, 2. Accordingly, it will be given narrow construction.

As the court explained in *Quinonez*, the question in this case is: whether in classifying Plaintiffs as non-employees/partners, Defendant has violated the law. 2010 WL 4569873 at * 3. Like in *Quinonez*, that question does not fall within the scope of the forum selection clause because it does not "arise out of" the contracts allegedly entered into by Plaintiffs and Defendant.

*Quinonez* explains:

> The claims brought by plaintiff do not arise under the contract between the parties but from the California Labor Code. Specifically, plaintiff argues that defendant illegally classified plaintiff, and other installers and helpers like him, as independent contractors to deny meal and overtime benefits provided by the California Labor Code. Neither party contests that plaintiff is classified as a independent contractor in the contract between the parties, so the interpretation of the contract is not at issue. Rather, the question is whether in classifying plaintiff, and others like him, as an independent contractor defendant has violated the law. Thus, the proper analytical exercise in resolving this action does not turn on the Subcontractor Installation Agreement. The forum-selection clause does not apply to this action.

7

2010 WL 4569873 at *2-3 (*citing Narayan v. EGL, Inc.*, 616 F.3d 895, 899, 904 (9th Cir. 2010)).[5]

The same is true here, neither party contests that Plaintiffs are classified as non-employees/partners in the contract between the parties; the interpretation of the contract is not at issue. The question is whether in classifying Plaintiffs as non-employees, Defendant has violated the law.

V. <u>CONCLUSION AND ORDER.</u>

For the reasons set forth above:

Defendant's motion to dismiss for improper venue is DENIED. Defendant must file an answer by February 21, 2012.

**IT IS SO ORDERED.**

Dated:   **February 6, 2012**                    **/s/ Lawrence J. O'Neill**
                                                                    **UNITED STATES DISTRICT JUDGE**

---

[5] Defendant asserts *Narayan* cannot be relied upon here because it involves a choice of law provision and not a forum selection provision. However, this is likely a distinction without a difference as applied to the instant case. The relevant clause here not only speaks to forum selection, but choice of law as well. Decl. Schober, Ex. 1, 2 ("This Agreement and all issues regarding the rights and obligations of the Members, the construction, enforcement and interpretation hereof, and the formation, administration and termination of the Company *shall be governed by the provisions of the laws in New York, without reference to conflict of law principles*.")(emphasis added). Had this case been dismissed and re-filed in New York, Defendant no doubt would have asserted this clause if Plaintiffs made a conflict of laws objection to the *Eerie* doctrine application of New York law. Accordingly, the same concerns apply here as those which arose in *Narayan* and the case is applicable.

8