IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOR RONLAKE and PAULA RONLAKE, | CASE NO. CV-F-11-2009 LJO MJS |
| Plaintiff, | **ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCOMPLAINT** (Doc. 23) |
| vs. | **and MOTION TO STRIKE** (Doc. 27) |
| US-REPORTS, INC., and GROUP MANAGEMENT 0002 LLC, | |
| Defendants. | |

and related counteraction.

_____ /

### INTRODUCTION

Counterclaim defendants Thor Ronlake ("Mr. Ronlake") and Paula Ronlake ("Mrs. Ronlake") (collectively "the Ronlakes") move to dismiss the counterclaim[1] filed against them by counterclaimant Group Management 0002 LLC ("GM2"). The Ronlakes argue that the counterclaim for indemnity must be dismissed because it is based on an unenforceable provision of an unenforceable agreement between the parties. In addition, the Ronlakes move to strike the counterclaim against them pursuant to California Code of Civil Procedure 425.16, commonly referred to as an "anti-SLAPP" motion. The Ronlakes argue that the counterclaim is a SLAPP action that arises out of their protected activity of filing a lawsuit in this action. For the reasons discussed herein, this Court DENIES the motion to dismiss and DENIES the motion to strike.

---

[1] The countercomplaint against the Ronlakes is erroneously styled as a "cross complaint."

1

1

**BACKGROUND**

2

**Allegations of the Complaint**

3    The Ronlakes filed a complaint in state court against GM2 and US-Reports, Inc. ("USR"),

4  alleging various federal and state labor violations, fraud, and breach of fiduciary duties.  The Ronlakes'

5  complaint is based on the following allegations:

6    In approximately 1999, the Ronlakes were hired as "inspectors" by USR.  USR's principle

7  business is to provide inspection reports of business, home, and other real property for companies and

8  businesses that want or provide physical insurance.  The Ronlakes' job duties as inspectors included

9  going to businesses and homes, as directed by USR, filling out an inspection report and providing that

10  inspection report to USR.  The inspection reports were extremely detailed and prescribed in minute

11  detail the items that the Ronlakes were to inspect.  USR paid the Ronlakes on a per job basis and were

12  reimbursed for mileage.  The Ronlakes were identified as employees of USR and were provided W-2

13  forms showing their income from USR on an annual basis.

14    In July 2007, the Ronlakes were advised by USR that the outward appearance of their business

15  relationship with USR would change.  The Ronlakes were advised that moving forward, they would be

16  partners in an entity called GM2, and that they would perform their inspection services for USR as

17  "partners" of GM2.  The Ronlakes would no longer receive payment for their services from USR

18  directly.  Rather, they would be paid through GM2.  The Ronlakes understood that if they refused this

19  arrangement, they would be terminated by USR.  They paid no consideration for their "partnership

20  interest" in GM2.

21    Once the arrangement was made, the nature of their work and the relationship with USR did not

22  change substantially.  USR continued to identify the businesses and homes that it wanted the Ronlakes

23  to inspect.  The Ronlakes were required to take those jobs if they wished to continue to receive work

24  from USR.  USR continued to specify in detail what and how the Ronlakes would inspect the properties.

25  The Ronlakes continued to perform their inspection services exclusively for USR.

26    After July 2007, the compensation the Ronlakes were to receive was deposited into a deposit

27  account.  The Ronlakes received a K-1 form from GM2, purporting to show their compensation as a

28  "partner" of GM2.  At no time did GM2 pay the Ronlakes for any share of any profits for GM2 or

1    account to the Ronlakes for any business activity that GM2 was engaged in.  At no time have the

2    Ronlakes been provided with a copy of any partnership agreement or limited liability company

3    organization documentation, no any information about the financial status of GM2.

4         The Ronlakes allege that there was an attempted illegal waiver of their rights that they were

5    unaware of until they reviewed GM2's website in September 2011.  Such waivers include the following:

6         Members who join GM2 must understand and agree without any objections that as a
          Member/Partner of GM2 they do not qualify as an employee of GM2, Member
7         Management LLC, any other company or any firms/brokers they do business with while
          operating as a Member/Partner of GM2 so: (i) They must agree that they will not attempt
8         to have any labor related board/agency pursue a wage per hour, overtime or any other
          labor relate claim on their behalf against GM2 under any circumstances, and (ii) They
9         must agree that they will not attempt to have any labor related board/agency pursue a
          wage per hour, overtime or any other labor related claim on their behalf against Member
10        Management LLC, any other company or any firms/brokers based upon what they have
          performed or have been paid as a Member/Partner of GM2. (iii) They must agree to be
11        individually and personally liable for and pay any parties expenses and damages
          stemming from their falsely pursuing any labor related claim based upon what they have
12        performed or have been paid as a Member/Partner of GM2.

13        The Ronlakes further allege, *inter alia*, that GM2 has withheld money from the Ronlakes, or has

14   charged them, or has made a secret profit from them, without the Ronlakes' knowledge.  In addition, the

15   Ronlakes allege that there were charged without their knowledge for a "Member Management Service

16   Charge," and two "Physical Insurance Inspection Premium Audits."

17        The Ronlakes maintain that despite the arrangement with GM2, they remain employees of either

18   GM2 or USR.  They allege that they have worked overtime without being compensated at the statutorily-

19   required rates.  They further allege that GM2 and USR violated various provisions of labor laws

20   including making improper deductions on wages, failure to reimburse employees for necessary business

21   expenses, requiring the Ronlakes to purchase services, and failing to provide wage statements.

22                         **Allegations of the Countercomplaint**

23        GM2 filed a countercomplaint against the Ronlakes based on the following allegations:

24        On June 27, 2008, the Ronlakes became members of GM2.  As members of GM2, the Ronlakes

25   are subject to and bound by the Operating Agreement.  Paragraph 3.8 the Operating Agreement contains

26   an indemnity and hold harmless provision as follows:

27        3.8.1.  A Member will be personally and financially liable if they initiate, file for or
                  pursue a wage per hour claim, overtime claim, or any other employee based labor
28   related claim against the Company, Member Management LLC, any other company or any firms/brokers

                                        3

based upon what they performed, invoiced for or were paid for while performing any activities or services as a Member of the Company.

    3.8.2.  A Member will be personally and financially liable if they initiate, file or or pursue any unemployment claim against the Company, Member Management LLC, any other company or any firms/brokers based upon what they performed, invoiced for or were paid for while performing any activities or services as a Member of the Company.

    3.8.3.  A Member will be personally and financially liable if they initiate for or pursue any disability claim against the Company, Member Managment LLC, any other company or any firms/brokers based upon what they performed, invoiced for or were paid for while performing any activities or services as a Member of the Company.

    3.8.4.  A Member will indemnify and hold harmless the Company, Member Management LLC, any other Member or Manager of the Company from and against any and all actions, losses, liabilities, damages, costs and expenses, including reasonable attorney's fees, arising from or in connection with any violation by such Member of the agreements set forth in Section 3.8.1, 3.8.2, or 3.8.3.

Countercompl., Exh. 1.

The Operating Agreement was amended and restated on December 29, 2011.  Countercompl., Exh. 2.  The Ronlakes agreed to and acknowledged the changes to the Operating Agreement in writing on January 4, 2012. Countercompl., Exhs. 3, 4.  In the Acknowledgments, the Ronlakes confirmed that they received and reviewed a copy of the Operating Agreement and its Amendments. *Id*.

On October 25, 2011, the Ronlakes initiated the instant acting on the Fresno County Superior Court, alleging violations of the California Labor Code and seeking damages for unpaid overtime, failure to reimburse business expenses, failure to provide itemized wage statements, fraud, improperly compelling the Ronlakes to pay a weekly computer access fee, breach of fiduciary duty, and unfair business practices.

GM2 demanded, pursuant to the terms of the indemnity provision of the Operating Agreement, that the Ronlakes indemnify and hold harmless GM2 from liability that GM2 has incurred and will incur in the future based on this action.

GM2 seeks a judicial determination of the respective rights and duties of GM2 and the Ronlakes. Specifically, GM2 seeks declaratory judgment that by virtue of the Operating Agreement, the Ronlakes are obligated to indemnify and hold harmless GM2 from any and all damages, judgment, or other awards

4

1   that may be recovered against GM2 as a result of the Ronlakes' action against it.  In addition, GM2

2   asserts a claim of indemnity against the Ronlakes.  In the counteraction, GM2 seeks to recover from the

3   Ronlakes all loss or liability incurred by, and attorney's fees and costs incurred in defending, the action

4   against GM2 by the Ronlakes.

5                                  **Motion to Dismiss Countercomplaint**

6          On April 2, 2012, the Ronlakes moved to dismiss the countercomplaint pursuant to Fed. R. Civ.

7   P. 12(b)(6).  The Ronlakes argue that the Operating Agreement is unenforceable, because GM2 is barred

8   from seeking to enforce exculpatory provisions against the Ronlakes, who are fiduciaries of GM2.

9   Apparently in the alternative, the Ronlakes argue that despite the Operating Agreement, they are

10  employees of USM.  The Ronlakes argue that GM2's contract is unenforceable against them because a

11  party cannot contract away liability for fraudulent acts or violations of statutory law or regulations.  The

12  Ronlakes contend that because their rights as employees are codified in federal and state law, the

13  Operating Agreement's provision that attempts to contract away those rights is unenforceable.

14         In opposition, GM2 argues that the Ronlakes' motion to dismiss fails on several grounds.  As

15  to the Ronlakes' argument based on the assertion that they are fiduciaries of GM2, GM2 argues that this

16  argument establishes the merits of GM2's action against the Ronlakes.  GM2 argues that by asserting a

17  claim for breach of fiduciary duty, and by arguing that the Ronlakes are fiduciaries of GM2, the

18  Ronlakes admit that they are members of GM2, not employees.  GM2 argues that if the Ronlakes are

19  members of GM2 and not employees, then they are not entitled to overtime compensation or subject to

20  other wage and hour statutes.  GM2 further argues that if the Ronlakes are not entitled to overtime and

21  other wage and hour law protections, then the indemnification clause in the Operating Agreement is not

22  exculpatory.  As to the Ronlakes' argument based on the assertion that they are employees, GM2

23  contends that the Ronlakes must accept as true the allegations of the countercomplaint in a Fed. R. Civ.

24  P. 12(b)(6) motion.  Because GM2 alleged that the Ronlakes are members of GM2, this argument fails.

25                                       **Anti-SLAPP Motion**

26         In addition to filing a motion to dismiss, the Ronlakes filed an anti-SLAPP motion against GM2.

27  The Ronlakes argue that the countercomplaint is a SLAPP suit–a strategic lawsuit against public

28  participation–that was filed to chill or punish the Ronlakes' exercise of their right to petition the

1  government for redress of their grievances through filing the instant action.  The Ronlakes argue that

2  GM2 will not "probably prevail" on the claim, because GM2 is barred from seeking to enforce

3  exculpatory provisions against the Ronlakes that are contrary to public policy.  Similar to the arguments

4  presented in the motion to dismiss, the Ronlakes appear to set forth alternative arguments of why the

5  contract provision is unenforceable against them.  The first argument relies on the Ronlakes' position

6  that a fiduciary relationship exists between them and GM2.  The second argument relies on the

7  Ronlakes' position that they are employees of either GM2 or USM.

8      GM2 argues that its countercomplaint is not subject to a motion to strike, because it demonstrates

9  a probability of prevailing on the merits of its claims.  Specifically, GM2 asserts that it has established

10 that a contractual agreement exists between GM2 and the Ronlakes which includes an indemnity

11 provision and that it has incurred costs pursuant to that provision.  GM2 further argues that the evidence

12 establishes that the Ronlakes are members of GM2, not employees.

13                                            **DISCUSSION**

14 **I.       Motion to Dismiss**

15         **A.       Standard of Review**

16      A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the

17 pleadings set forth in the complaint or countercomplaint.  A Fed. R. Civ. P. 12(b)(6) dismissal is proper

18 where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged

19 under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

20 In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the

21 allegations of the complaint, construes the pleading in the light most favorable to the party opposing the

22 motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588

23 (9th Cir. 2008).

24      To survive a motion to dismiss, the plaintiff or counterclaimant must allege "enough facts to state

25 a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955,

26 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

27 court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

28 *v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability

1    requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

2    (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with'

3    a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to

4    relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

5         "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

6    allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

7    than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

8    *Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (internal citations omitted).   Thus, "bare

9    assertions...amounting to nothing more than a 'formulaic recitation of the elements'...are not entitled to

10   an assumption of truth." *Iqbal*, 129 S. Ct. at 1951 (quoted in *Moss v. United States Secret Serv.*,572 F.3d

11   962, 969 (9th Cir. 2009)).   A court is "free to ignore legal conclusions, unsupported conclusions,

12   unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm*

13   *Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted).   In

14   practice, a counterclaim "must contain either direct or inferential allegations respecting all the material

15   elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

16        **B.     Argument Based on Alleged Employer-Employee Relationship**

17        The Ronlakes' arguments based on their allegations that they are employees of either GM2 or

18   USM are inappropriate for a Fed. R. Civ. P. 12(b)(6) motion.  Pursuant to well-settled standards of

19   review set forth above, this Court must accept as true all allegations of the operative pleading and

20   construe the pleading in a light most favorable to the non-moving party.  In the countercomplaint, GM2

21   alleged that the Ronlakes are members of GM2 based on the Operating Agreement and Amendments,

22   which the Ronlakes signed and acknowledged.   As the Ronlakes pointed out, a provision of the

23   Operating Agreement explicitly sets forth that the agreement does not establish an employment

24   relationship.  Despite these allegations, the Ronlakes argue that under the economic reality test, GM2

25   was the employer of the Ronlakes.   This analysis would require this Court to make factual

26   determinations based on a multi-factor analysis.  This type of analysis is wholly inappropriate in a Fed.

27   R. Civ. P. 12(b)(6) motion.  The Ronlakes' apparent misunderstanding of Fed. R. Civ. P. 12(b)(6)

28   standards is highlighted in their reply, wherein the Ronlakes criticize GM2 for "offer[ing] no evidence

1  to rebut the conclusion that US Reports was an employer of the Ronlakes." Reply, Doc. 39 at p. 5.  GM2

2  has no burden to produce evidence to rebut factual assertions made by the Ronlakes that are not found

3  in the FAC.

4      Moreover, the Court cannot determine at this stage whether or not the provision is exculpatory

5  against the Ronlakes based on public policy.  The determination of that question requires factual

6  determinations of whether the Ronlakes were members of GM2, whether they were employees of GM2,

7  or whether they were employees of USR.  The Ronlakes argue that the provision of the Operating

8  Agreement are unenforceable because they are attempt to exclude GM2 from liability for violations of

9  federal and state labor laws.  Those laws, however, protect employees.  These provisions would not be

10  against public policy or labor laws if the Ronlakes were not employees.  According to the allegations

11  of the countercomplaint, the Ronlakes were not employees of GM2.  Accordingly, the Ronlakes' legal

12  argument, which depends on facts outside of the countercomplaint, fails.

13      Because this Court must accept as true the allegations of the countercomplaint, the Court must

14  also reject Ronlakes' factual assertions that are contrary to these allegations.  The Ronlakes' arguments

15  based on an employment relationship between them and GM2 fail, because they are based on a premise

16  that is not supported by the factual allegations of the FAC.  Accordingly, this Court denies the Ronlakes'

17  motion to dismiss to the extent that they argue that the Operating Agreement is unenforceable against

18  them because they are employees.

19      **B.      Argument Based on Alleged Fiduciary Relationship and Breach**

20      The Ronlakes contend that because of the fiduciary relationship between the Ronlakes and GM2,

21  GM2 is barred from seeking to enforce exculpatory provisions against the Ronlakes.  The Ronlakes

22  argue that an exculpatory clause that excuses one party in a position of trust over another is

23  unenforceable.

24      "The law has traditionally viewed with disfavor attempts to secure insulation from one's own

25  negligence or wilful misconduct[.]" *Neubauer v. Goldfarb*, 108 Cal. App. 4th 47, 56 (2003).  Moreover,

26  it is the "express  statutory policy" of the statue of California that "'[a]ll contracts which have for their

27  object, directly or indirectly, to exempt anyone from the responsibility for his own fraud or willful injury

28  to the person or property of another, or violation of law, whether willful or negligent, are against the

8

1  policy of the law." Cal. Civ. Code § 1668. "This public policy applies with added force when the

2  exculpatory provision purports to immunize persons charged with a fiduciary duty from the

3  consequences of betraying their trusts[.]" *Cohen v. Kite Hill Community Assn.*, 142 Cal. App. 3d 642,

4  654 (1983). Based on consistent California law, contracts that are against public policy are

5  unenforceable. *Id*.

6      To the extent that the Operating Agreement attempts to excuse GM2 from liability that is against

7  public policy, the Operating Agreement is unenforceable. For example, the Operating Agreement cannot

8  excuse GM2 from liability for breaching the fiduciary duty it owes to the Ronlakes, if any. A "breach

9  of fiduciary duty constitutes a 'willful injury to the … property of another' under [California] Civil Code

10  section 1668 and therefore cannot be contractually excused." *Goldfarb*, 108 Cal. App. 4th at 56.

11  Moreover, the Operating Agreement cannot excuse GM2 from liability for intentional torts, including

12  fraud. *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1035 (9th Cir. 1992).

13      These claims, however, are asserted in the Ronlakes' complaint against GM2. These claims are

14  not at issue in the countercomplaint. Thus, while these arguments might form the basis of the Ronlakes'

15  affirmative claims, or provide a defense to the counterclaims, they do not establish that the counterclaim

16  must be dismissed in full as a matter of law. Accordingly, the Ronlakes' motion to dismiss is denied.

17  **II.      Anti-SLAPP Motion**

18      **A. Standard of Review**

19      California's "Anti–SLAPP" statute provides in relevant part:

20      A cause of action against a person arising from any act of that person in furtherance of
        the person's right of petition or free speech under the United States or California
21      Constitution in connection with a public issue shall be subject to a special motion to
        strike, unless the court determines that the plaintiff has established that there is a
22      probability that the plaintiff will prevail on the claim.

23  Cal.Code Civ. Pro. § 425.16(b)(1).

24      A court considering a motion to strike under the Anti–SLAPP statute must engage in a two-part

25  inquiry. First, a defendant must make an initial prima facie showing that the plaintiff's suit "aris[es]

26  from" activity protected by the Anti–SLAPP statute. *Brill Media Co. v. TCW Group, Inc.*, 132

27  Cal.App.4th 324, 329 (2005); Cal.Code Civ. Pro. § 425.16(b)(1). In performing this analysis, the

28  California Supreme Court has stressed, "the critical point is whether the plaintiff's cause of action itself

1   was based on an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v.*

2   *Cashman*, 29 Cal.4th 69, 78 (2002).

3          If the defendant is able to make this threshold showing, the burden shifts to the plaintiff to

4   demonstrate a probability of prevailing on the challenged claims. In practice, a plaintiff must show that

5   the claim is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain

6   a favorable judgment if the evidence submitted by the plaintiff is credited." *Jarrow Formulas, Inc. v.*

7   *LaMarche*, 31 Cal.4th 728, 744 (2003). Claims for which Plaintiff is able to satisfy this burden are "not

8   subject to being stricken as a SLAPP." *Id*.

9          The Ninth Circuit articulated the evidentiary burden applicable to Anti–SLAPP motions heard

10  in federal district court:

11          In the anti-SLAPP context, "probability" is a low bar. To withstand an anti-SLAPP
            motion to strike in California, the plaintiff must demonstrate that the complaint is both
12          legally sufficient and supported by a sufficient prima facie showing of facts to sustain a
            favorable judgment if the evidence submitted by the plaintiff is credited. In deciding the
13          question of potential merit, the trial court considers the pleadings and evidentiary
            submissions of both the plaintiff and the defendant; though the court does not weigh the
14          credibility or comparative probative strength of competing evidence, it should grant the
            motion if, as a matter of law, the defendant's evidence supporting the motion defeats the
15          plaintiff's attempt to establish evidentiary support for the claim.

16  *Manufactured Home Communities, Inc. v. Cnty. of San Diego*, 655 F.3d 1171, 1176–77 (9th Cir.2011)

17  (internal alterations and quotation marks omitted). The plaintiff's burden resembles the burden he would

18  have in opposing a motion for summary judgment or directed verdict. *Gilbert v. Sykes*, 147 Cal.App.4th

19  13, 53(2007); *Roberts v. McAfee Inc.*, 660 F.3d 1156, 1163 (9th Cir.2011).

20          **B.        Counteraction "arises from" protected activity**

21          The Ronlakes bear the burden of establishing a prima facie showing that the GM2's counteraction

22  "aris[es] from" activity protected by the Anti–SLAPP statute. *Brill Media*, 132 Cal.App.4th at; Cal.Code

23  Civ. Pro. § 425.16(b)(1). "[T]he critical consideration is whether the cause of action is based on the

24  defendant's protected free speech or petitioning activity." *Navellier v. Sletten*, 29 Cal.4th 82, (2002).

25  "[A] defendant that satisfies its initial burden of demonstrating the targeted action is one arising from

26  protected activity faces no additional requirement of proving the plaintiff's subjective intent ... Nor need

27  a moving defendant demonstrate that the action actually has had a chilling effect on the exercise of such

28  rights." *Id*. at 88 (citation omitted). "A defendant meets this [protected activity] burden by demonstrating

1  that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16,

2  subdivision (e)." *Braun v. Chronicle Publishing Co.*, 52 Cal.App.4th 1036, 1043 (1997).

3      The Ronlakes have established that GM2's counteraction "arises from" activity protected by the

4  anti-SLAPP statute.  According to the statute, an "act in furtherance of a person's right of petition or free

5  speech under the United States or California Constitution in connection with a public issue" includes

6  "any other conduct in furtherance of the exercise of the constitutional right of petition or the

7  constitutional right of free speech in connection with a public issue or an issue of public interest." Cal.

8  Code Civ. P. §425.16.  "The constitutional right to petition ... includes the basic act of filing litigation

9  or otherwise seeking administrative action." *Ludwig v. Superior Court*, 37 Cal.App.4th 8, 19 (1995). "It

10 is well established that filing a lawsuit is an exercise of a party's constitutional right of petition." *Chavez*

11 *v. Mendoza*, 94 Cal.App.4th 1083, 1087 (2001). The "filing of a judicial complaint satisfies the 'in

12 connection with a public issue' component of section 425.16, subdivision (b)(1) because it pertains to

13 an official proceeding." *Id*. at 1087.

14      **C.      Probability of Success of GM2's Countercomplaint**

15      Because the Ronlakes have established that the countercomplaint arises from protected activity,

16 the burden shifts to GM2 to demonstrate a probability of prevailing on the challenged claims.    To

17 overcome the motion to strike, GM2 must establish that its counterclaims against the Ronlakes are "both

18 legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable

19 judgment if the evidence submitted by the plaintiff is credited." *Jarrow Formulas, Inc.*, 31 Cal.4th at

20 744.  If a claim is supported by sufficient facts and law, that claim is "not subject to being stricken as

21 a SLAPP." *Id*.

22      GM2 argues that it has alleged and will establish a prima facie showing that it will prevail at trial

23 on its countercomplaint against the Ronlakes for indemnity.  "An indemnitee seeking to recover on an

24 agreement for indemnification must allege the parties' contractual relationship, the indemnitee's

25 performance of that portion of the contract which gives rise to the indemnification claim, the facts

26 showing a loss within the meaning of the parties' indemnification agreement, and the amount of damages

27 sustained." *Four Star Electric, Inc v F & H Construction*, 7 Cal. App. 4th 1375, 1380 (1992).  GM2

28 submits that he has alleged sufficient facts to prove, and has evidence to support a prima facie case for

1    this its express indemnity cause of action.

2         GM2 has alleged and has sufficient evidence to establish that the parties have a contractual

3    relationship.  GM2 has alleged, and attached to the countercomplaint, that the parties have entered into

4    the Operating Agreement and its Amendments.  Although the Ronlakes dispute that they have received

5    the Operating Agreement, there is evidence supports GM2's position that they entered into the agreement

6    with the Ronlakes, because GM2 submits that documents bearing the Ronlakes' signature that purports

7    to establish that they are signatories to the agreement.  In addition, the contractual agreement between

8    the parties includes a provision in which the Ronlakes agreed to indemnify GM2 for costs and fees if

9    the Ronlakes bring an action against GM2 for labor law violations.  Based on the evidence presented,

10   GM2 has established the first element of its indemnity claim.

11        Next, GM2 must establish through its performance of the contract and the facts showing a loss

12   to GM2 within the meaning of the parties' indemnification agreement.  Here, GM2 presents evidence

13   that it has expended money defending the lawsuit that the Ronlakes filed against it seeking, *inter alia*,

14   wage and hour compensation.  This evidence raises facts to support the elements of GM2's claims

15   against the Ronlakes.  Accordingly, GM2 has established that it has a "probability" of establishing its

16   indemnity claim.

17        In opposition, the Ronlakes argue that GM2 has no probability of success because the indemnity

18   provisions are unenforceable.  The Ronlakes argue that the facts clearly establish that they are employees

19   of GM2 or USR and that the Operating Agreement.  Because they are employees, GM2 cannot contract

20   away its or USR's liability for violating federal and state labor laws.

21        This Court agrees that pursuant to California law, discussed more fully above, USR cannot

22   contract away its or USR's liability for violation of federal and state labor laws.  GM2 cannot require

23   the Ronlakes to pay for this lawsuit that seeks to enforce their rights to overtime, minimum wage,

24   worker's compensation, and other laws.  Such a contractual provision would be against California law

25   and public policy.  The Ronlakes' legal position, however, depends on the factual determination that they

26   were *employees* of GM2.

27        The question of whether a person is an employee is "generally referred to as a mixed question

28   of law and fact." *Mission Ins. Co. v. Worker's Comp. Appeals Board*, 123 Cal. App. 3d 211, 219 (1981).

1    "Where two reasonable inferences can be drawn from the evidence," then the issue is a question of fact.

2    *Id.* The determination of employee status is also a question of fact if it is dependent upon the resolution

3    of disputed evidence or inferences. *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48

4    Cal.3d 341, 349 (1989). On the other hand, where only one inference can reasonably be drawn from the

5    evidence, the determination becomes a question of law." *Mission Ins. Co.*, 123 Cal. App. 3d at 219.

6    The principal question is "whether the person to whom service is rendered has the right to control

7    the manner and means of accomplishing the result desired." *Borello,* 48 Cal. 3d at 350. "If the employer

8    has the authority to exercise complete control, whether or not that right is exercised with respect to all

9    details, an employer-employee relationship exists." *Empire Star Mines Co. v. Cal. Emp. Com.*, 28 Cal.

10   2d 33, 43 (1946). In addition to the right to control, other factors that are considered to determine the

11   employment relationship include:

12       (1) whether the worker is engaged in a distinct occupation or business, (2) whether,
         considering the kind of occupation and locality, the work is usually done under the
13       principal's direction or by a specialist without supervision, (3) the skill required, (4)
         whether the principal or worker supplies the instrumentalities, tools, and place of work,
14       (5) the length of time for which the services are to be performed, (6) the method of
         payment, whether by time or by job, (7) whether the work is part of the principal's regular
15       business, and (8) whether the parties believe they are creating an employer-employee
         relationship.

16

17   *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal.App.4th 1, 10 (2007) (noting that "there are

18   a number of additional factors in the modern equation").

19   GM2 contends that the Operating Agreement establishes that the Ronlakes are members of GM2,

20   not employees. The Operating Agreement explicitly provides that no employment relationship is being

21   established between the parties. In addition, the Operating Agreement provides that members are

22   responsible for marketing themselves and maintaining their own contracts. Pursuant to the Agreement,

23   members may contract with any entity and do not work exclusively for GM2. GM2 submits evidence

24   that it exercises no control over how members perform their duties, with whom they do business, how

25   much they charge their clients, how much or little work they perform, or when or where members

26   perform their services for their clients. Decl. of John Schober, 3. GM2 also provides evidence that in

27   the four years that the Ronlakes were members of GM2, they have been less than a dozen

28   communications between GM2 and the Ronlakes.

1    In alternative arguments, the Ronlakes argue that they are employees of either USR and GM2.

2  The Ronlakes submit that GM2 is their employer, because GM2's Operating Agreement specifies in

3  minute detail the ways in which GM2 controls how the Ronlakes will perform their duties for GM2,

4  which results in money being paid by its clients to GM2.  They argue that USR is the Ronlakes'

5  employer, because it exercises complete control over the way in which the Ronlakes perform their

6  duties.  The Ronlakes argue that they were employees of USR until they were "ordered and required by

7  US-Reports to become members of GM-2." Reply, Doc. 28, p. 10.  The Ronlakes maintain that after they

8  became members of GM2, their relationship with USR remained the same as when they were employees.

9  Merging the two, the Ronlakes contend that GM2 is a "conspirator with respect to US-Reports'

10  strategem for avoiding employer obligations." *Id*.

11    The Ronlakes have failed to establish that they have an employee relationship with GM2 or USR

12  as a matter of law.  This Court finds that two reasonable inferences can be made from the evidence

13  presented.   The Operating Agreement establishes that the Ronlakes are members of GM2, not

14  employees.  The evidence presented by the Ronlakes raises an inference that they continued to be

15  employees of USR.  This evidence does not conclusively establish this relationship as a matter of law,

16  however.  The question of fact remains to be established.

17    Having considered the evidence presented, this Court finds that GM2 satisfied its burden to

18  establish a probability of success on its indemnity claim.  As set forth above, that standard is a "low bar,"

19  and can be satisfied by setting forth evidence that supports its position.  GM2 presents evidence through

20  declarations and the Operating Agreement which establishes that the parties have an indemnity

21  agreement, the Ronlakes took action that triggered the indemnity provision, and GM2 has suffered

22  damages as a result.  In opposition, the Ronlakes argue that the indemnity provision cannot be enforced,

23  because it is contrary to public policy.  This argument relies on the Ronlakes' theory that they are

24  employees of either GM2 or USR, and that GM2 is set up to allow USR to avoid employer liability.

25  While the Ronlakes have presented evidence to raise an inference to support their theory, questions of

26  fact remain.  Because this Court cannot determine the issue as a matter of law, GM2's counterclaim is

27  not subject to a motion to strike.  Accordingly, the Ronlakes' motion to strike is denied.

28  ///

1

## CONCLUSION

2        For the foregoing reasons, this Court DENIES the Ronlakes' motion to dismiss (Doc. 23) and

3   motion to strike (Doc. 27).

4

5                                             IT IS SO ORDERED.

6   **Dated:      May 7, 2012**                        **/s/ Lawrence J. O'Neill**
                                                  UNITED STATES DISTRICT JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28