IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOR RONLAKE, et al., | CASE NO. CV F 11-2009 LJO MJS |
| Plaintiffs, | **ORDER ON PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION** |
| vs. | (Doc. 50.) |
| US-REPORTS, INC., et al., | |
| Defendants. | |
| _____ / | |
| AND RELATED COUNTER ACTION. | |
| _____ / | |

## INTRODUCTION

Plaintiffs/counter-defendants Thor Ronlake and Paula Ronlake (collectively the "Ronlakes") seek an anti-suit injunction to enjoin a New York state court action brought against them by Member Management LLC ("Member Management"), which the Ronlakes characterize as an agent of defendant/counterclaimant Group Management 0002, LLC ("GM2"). The Ronlakes contend that the New York action is identical to GM2's counterclaims against the Ronlakes in this action. GM2 responds that the Ronlakes fail to meet the test for an anti-suit injunction and denies the identity of their counterclaims and the New York action. This Court considered the Ronlakes' motion for an anti-suit

injunction on the record and VACATES the October 2, 2012 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DENIES the Ronlakes an anti-suit injunction to enjoin Member Management's New York action.

## BACKGROUND

### Summary

The Ronlakes pursue overtime compensation and related claims against GM2 and defendant US-Reports, Inc. ("US Reports"). GM2 pursues counterclaims that the Ronlakes are not entitled to overtime compensation and are obligated to indemnify GM2's legal expenses to defend the Ronlakes' claims. In a New York state court action, Member Management pursues claims against the Ronlakes that the Ronlakes are liable for legal expenses to defend against the Ronlakes' claims. The Ronlakes seek cessation of the New York action as identical to GM2's counterclaims against the Ronlakes. GM2 denies identity of their counterclaims and the New York action in that the actions involve different parties and issues.

### The Ronlakes' Inspection Services

US Reports provides insurance audits and inspection services. As of the early 2000s, US Reports employed the Ronlakes as property insurance inspectors. The Ronlakes were paid per job and received W-2 forms from US Reports.

In July 2007, the Ronlakes were advised that they would perform their inspection services for US Reports as partners of GM2 through which they would be paid. The Ronlakes paid no consideration for their GM2 partnership interest.

After July 2007, the nature of the Ronlakes' work and relationship with US Reports did not change substantially. The Ronlakes' compensation was placed in a deposit account, and the Ronlakes received K-1 forms from GM2 to show their compensation as a GM2 partner. GM2 did not pay the Ronlakes GM2 profit shares or account to the Ronlakes for GM2 business activity.

### The Ronlakes' Claims

The Ronlakes proceed on their Complaint ("complaint") in this action to allege that despite the arrangement with GM2, the Ronlakes remained employees of GM2 or US Reports to entitle them to statutory overtime compensation. The complaint alleges that GM2 and US Reports violated federal and

California labor statutes by failing to pay overtime compensation, to make proper wage deductions, to reimburse employee expenses and to provide wage statements and by requiring the Ronlakes to purchase services.

### **GM2's Counterclaims**

GM2 proceeds on a Cross Complaint for Indemnity ("counterclaim")[1] to allege that on June 27, 2008, the Ronlakes became members of GM2 and subject to GM2's Operating Agreement ("operating agreement"), which includes the following indemnity provision ("indemnity provision"):

> **3.8   Personal Financial Liability**
>
> Each Member agrees that he or she will not initiate, file or pursue any of the following, and agrees to be personally and financially liable for any party's expenses and damages if that same Member initiates, files or pursues any of the following:
>
> 3.8.1   A Member will be personally and financially liable if they [sic] initiate, file or pursue a wage per hour claim, overtime claim or any other employee based labor related claim against the Company,[2] Member Management LLC, any other company or any firms/brokers based upon what they performed, invoiced for or were paid for while performing any activities or services as a Member of the Company.
> . . .
>
> 3.8.4   A Member will indemnify and hold harmless the Company, Member Management LLC, any other Member or Manager of the Company from and against any and all actions, losses, liabilities, damages, costs and expenses, including reasonable attorney's fees, arising from or in connection with any violation by such Member of the agreements set forth in Section 3.8.1 . . .

The operating agreement was amended and restated on December 29, 2011, and on January 4, 2012, the Ronlakes signed summaries to acknowledge changes to the operating agreement and to confirm their receipt of the operating agreement and its amendments.

The counterclaim seeks declaratory relief that the indemnity provision obligates the Ronlakes to indemnify GM2 for all damages arising from the Ronlakes' claims and seeks to recover from the

///

///

---

[1]   The counterclaim against the Ronlakes is incorrectly styled as a cross complaint. *See* F.R.Civ.P. 13(a).

[2]   The operating agreement identifies GM2 as "Company."

Ronlakes legal expenses to defend the Ronlakes' claims.[3]

**Denial Of Dismissal Based On Forum Selection Provision**

The operating agreement includes a forum selection provision ("forum provision"), which provides:

> 11.5   Governing Law and Consent to Jurisdiction
>
> This Agreement and all issues regarding the rights and obligations of the Members, the construction, enforcement and interpretation hereof, and the formation, administration and termination of the Company shall be governed by the provisions of the law of New York, without reference to conflict of law principles. The Company and each Member irrevocably submit to the exclusive jurisdiction of the Federal and state courts located in Erie County, New York, for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby.

This Court's February 6, 2012 order ("February 6 order") denied dismissal of this action based on the forum provision in that the Ronlakes demonstrated "unfairness because they were not given notice of the forum provision," "financial hardship," and that enforcement of the forum provision may deprive the Ronlakes of their "unwaivable statutory entitlement under the Cal. Labor Code in violation of California public policy."

**The New York Action**

On June 1, 2012, Member Management filed in a New York state court action ("NY action") its Complaint for Declaratory Judgment and Breach of Contract ("Member Management complaint"). The Member Management complaint alleges that pursuant to its service agreement with GM2 ("GM2 service agreement"), Member Management provides "for all of GM2's insurance coverage, banking services, tax preparation services, legal services, management services, and more based upon a fixed cost for each member of GM2." The service agreement obligates Member Management to "coordinate and pay for all of GM2's attorney's fees expenses that have to do with GM2 honoring, defending and or enforcing the terms of GM2's Operating Agreement. MM's financial liability will not go beyond the actual cost charged by the attorneys representing GM2 and excludes any costs from a Member, Manager or Agent

///

///

---

[3] The Ronlakes sought to dismiss the counterclaim in that the operating agreement is unenforceable, and this Court's May 7, 2012 order denied counterclaim dismissal.

of GM2 who initiates or takes action pursuant to Section 3.8 . . . of GM2's Operating Agreement."[4]

The Member Management complaint alleges that the Ronlakes "have violated" the indemnity provision along with operating agreement section 10.3.4 ("liability provision"), which provides:

> A Member, Manager, or Agent of the Company shall be personally liable to Company, notwithstanding the provisions of the New York Limited Liability Company Law, for any of the following actions . . . Such person attempts to have any labor related board, agency, or court pursue a wage per hour claim, overtime claim, or any other labor related claim on their behalf against the Company, Member Management LLC, any other company or any firms/brokers based upon what they performed, invoiced for or were paid for while performing any activities or services as a Member of the Company . . .

The Member Management complaint seeks declaratory relief that the Ronlakes are liable for all legal expenses associated with Member Management's "defense of any action" taken by the Ronlakes to violate the indemnity or liability provisions and in turn reimbursement from the Ronlakes of such legal expenses.

The Member Management complaint further alleges that pursuant to a service agreement with US Reports ("US Reports service agreement"), Member Management committed to provide US Reports with payment and invoicing consolidation services for GM2 members. The US Reports service agreement obligates Member Management to indemnify US Reports from claims by a partner of a company within Member Management's business network and "arising from non-compliance with local, state, or federal law pertaining to employee payroll taxes, employee withholding/contributions, unemployment insurance/claims, employee wage/hr, and disability insurance/claims." The Member Management complaint seeks declaratory relief that the Ronlakes are liable for legal expenses associated with the Ronlakes' violation of the US Reports Service agreement and in turn reimbursement from the Ronlakes of such legal expenses.

## DISCUSSION

### Foreign Anti-Suit Injunction

The Ronlakes contend that the NY action is identical to GM2's counterclaims in this action to warrant cessation of the NY action which seeks to undermine this Court's jurisdiction over "the issues in this case." The Ronlakes characterize the NY action as a "premeditated plan" to disregard the

---

[4] In her declaration, GM2 Managing Member Jennifer Entner ("Ms. Entner") states: "GM2 outsources certain administrative functions to Member Management LLC."

5

February 6 order "to drive up the Ronlakes' expenses so as to impose a burden on the Ronlakes . . . to surrender their claims." As such, the Ronlakes seek a foreign anti-suit injunction.

The Ronlakes rely on 28 U.S.C. § 1651(a), which provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." In addition, the Ronlakes rely on 28 U.S.C. § 2283, which empowers a stay of state court proceedings: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

"Courts derive the ability to enter an anti-suit injunction from their equitable powers. Such injunctions allow the court to restrain a party subject to its jurisdiction from proceeding in a foreign court in circumstances that are unjust." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006).

A district court has discretion to grant an anti-suit injunction when the adjudication of an issue "is likely to result in unnecessary delay and substantial inconvenience and expense to the parties and witnesses . . . [as well as] inconsistent rulings or even a race to judgment." *Seattle Totems Hockey Club, Inc. v. The National Hockey League*, 652 F.2d 852, 855-856 (9th Cir. 1981). A "district court does not abuse its discretion by issuing an antisuit injunction when it has determined that allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in 'inequitable hardship' and tend to frustrate and delay the speedy and efficient determination of the cause." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996) (internal quotations and citations omitted).

In *E & J Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991, 994 (9th Cir. 2006), the Ninth Circuit Court of Appeals enumerated factors to determine issuance of an anti-suit injunction:

    1.    Whether "the parties and issues are the same" and whether "the first action is dispositive of the action to be enjoined";

    2.    Whether the foreign litigation would "frustrate a policy of the forum issuing the injunction"; and

    3.    Whether the impact on comity from issuance of an anti-suit injunction "would be tolerable."

6

**Same Parties**

The Ronlakes characterize Member Management as GM2's agent in privity with GM2 "such that an judgment against one either [in] the New York or the California actions would be entitled to a res judicata effect against the other party." The Ronlakes contend that GM2 delegated management duties to Member Management so that GM2 acts through Member Management and that insofar as GM2 operates through Member Management, Member Management is GM2's agent.

The Ronlakes contend that Member Management is estopped to deny that Member Management and GM2 are the same entity and if not, Member Management lacks standing "to enforce GM2's purported contractual rights vis a vis the Ronlakes." The Ronlakes conclude that since Member Management seeks to enforce GM2's contract, GM2 is the real party in interest in the NY action. "The substantive basis for the real party in interest rule is to prevent just this kind of multiplication of lawsuits arising from the same facts, in order to protect potential defendants from the harassment, vexation, and expense of having to meet several lawsuits from different claimants involving the same claim or demand; and to insure that such defendants will be protected from further annoyance or loss in the future once a judgment is entered in a lawsuit on such a claim." *Saks v. Damon Raike & Co.*, 7 Cal.App.4th 419, 431-432, 8 Cal.Rptr.2d 869 (1992).

GM2 responds that Member Management and GM2 are distinct and lack a principal-agent relationship. Ms. Entner declares: "GM2 and Member Management are entirely separate entities, with different ownership, different management, different members, different bank accounts, different insurance, different operating agreements, and different tax returns." GM2 continues that its business relationship to outsource administrative functions to Member Management does render them as the same parties.

The Ninth Circuit in *Gallo* referred to the "same" parties, not parties in privity or subject to a contractual or principal-agent relationship. The Ronlakes fail to demonstrate that GM2 and Member Management are the "same." The record reveals that they are distinct entities which have entered into a business relationship. The Ronlakes fail to demonstrate application of res judicata to the "same parties" analysis at issue here and in turn that GM2 and Member Management are same parties for anti-suit injunction purposes.

7

1    In addition, GM2 raises a valid jurisdictional concern that this Court lacks personal jurisdiction
2 over Member Management. Anti-suit injunctions empower a court "to restrain a party subject to its
3 jurisdiction from proceeding in a foreign court in circumstances that are unjust." *Gallo*, 446 F.3d at 989.
4 "A federal district court with jurisdiction over the parties has the power to enjoin them from proceeding
5 with an action in the courts of a foreign country, although the power should be used sparingly." *Seattle*
6 *Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981). The absence of
7 personal jurisdiction over Member Management further warrants unavailability of an anti-suit
8 injunction.[5]

9    **<u>Same Issues</u>**

10    The Ronlakes argue that the issues subject to GM2's counterclaims and the NY action are the
11 same in that Member Management pursues "the same claim on the same contract for the same damages
12 in New York that GM2 is making in the present case." The Ronlakes continue that GM2 and Member
13 Management seek to recover the same defense costs initially borne by GM2 but reimbursed by Member
14 Management.

15    GM2 disagrees in that in the NY action, Member Management as a contract third-party
16 beneficiary attempts "to secure certain benefits" whereas in this action, GM2 as a contract party seeks
17 "to enforce its rights under a contract." GM2 characterizes Member Management as a "third party
18 beneficiary of the contract between the Ronlakes and GM2 and therefor has a legal right – separate from
19 GM2's legal right – to secure its benefits under the contract."

20    The Ronlakes fault that absence of their intent to benefit Member Management and to permit
21 Member Management to sue the Ronlakes for suing GM2.

22    "A person who is not a party to a contract may nonetheless have certain rights thereunder, and
23 may sue to enforce those rights, where the contract is made expressly for her benefit." *Mercury Cas. Co.*

---

[5] GM2 raises a further meaningful concern whether an anti-suit injunction may issue to enjoin an action pending in another state as compared to an action in another nation. "A parallel action in a different state presents sovereignty concerns that compel California courts to use judicial restraint when determining whether they may properly issue a TRO against parties pursuing an action in a foreign jurisdiction." *Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal.4th 697, 707, 128 Cal.Rptr.2d 172 (2002).

*v. Maloney,* 113 Cal.App.4th 799, 802, 6 Cal.Rptr.3d 647 (2003). "Where one person for a valuable consideration engages with another to do some act for the benefit of a third person, and the agreement thus made has not been rescinded, the party for whose benefit the contract or promise was made, or who would enjoy the benefit of the act, may maintain an action against the promisor for the breach of his engagement." *Johnson v. Holmes Tuttle Lincoln–Merc.,* 160 Cal.App.2d 290, 296, 325 P.2d 193 (1958).

GM2 fails to demonstrate that a contract between it and the Ronlakes was made to benefit Member Management, especially since GM2 contends that it outsourced administrative tasks to Member Management. That said, the Ronlakes fail to demonstrate that the exact same issues appear in this action and the NY action although there is overlap. The parties fail to mention that the NY action involves the US Reports service agreement, which is not at issue in this action. As such, the NY action includes issues not present in this action, and the Ronlakes fail to demonstrate that this action is dispositive of the NY action.

### Frustration Of California Policy

The Ronlakes argue that enforcement of the forum provision would frustrate California policy to promote California wage and hour regulations for its residents to deny the Ronlakes their day in court. The Ronlakes point to the February 6 order's findings of the Ronlakes' "financial hardship" and potential deprivation of their "unwaivable statutory entitlement under the Cal. Labor Code in violation of California public policy."

GM2 responds that the NY action seeks breach of contract damages and declaratory relief and does not seek "to make any determination whatsoever regarding California's wage and hour laws." GM2 further notes its counterclaims's survival from dismissal as this Court's recognition of the absence of frustration of California policy.

The NY action does not preclude the Ronlakes to pursue their claims in this action and as such, no frustration of California policy is present. The Ronlakes offer no authority that financial status applies to the policy frustration factor. Since the Ronlakes claims remain alive in this action, there is no showing of frustration of California policy.

### Impact On Comity

The Ronlakes point to an anti-suit injunction's "negligible" effect on New York given the

9

1  Ronlakes' absence of minimum contacts with New York and Member Management's failure to qualify
2  as a real party in interest.  The Ronlakes note that a NY action finding that the forum provision is
3  enforceable would imply that this Court lacks jurisdiction.
4      GM2 responds that Member Management is a New York company with "a right and an interest"
5  to pursue its claims against the Ronlakes in a New York court and that New York has an interest to
6  protect its citizens' ability "to litigate in its own courts."
7      Comity is "the recognition which one nation allows within its territory to the legislative,
8  executive or judicial acts of another nation, having due regard both to international duty and
9  convenience, and to the rights of its own citizens, or of other persons who are under the protection of
10 its laws." *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139 (1895). It "is neither a matter of absolute
11 obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Hilton*, 159 U.S. at
12 163–64, 16 S.Ct. 139.
13     The Ronlakes fail to address meaningfully the NY action's impact on comity or how the NY
14 action could disrupt this Court's rulings, to which GM2 is bound.  Nothing suggests an adverse impact
15 on comity arising from the NY action.  The NY action does not preclude the Ronlakes to pursue their
16 California-based claims in this Court.

## CONCLUSION AND ORDER

18     For the reasons discussed above, this Court DENIES the Ronlakes an anti-suit injunction to
19 enjoin the NY action.
20     IT IS SO ORDERED.
21 **Dated:   September 25, 2012**          **/s/ Lawrence J. O'Neill**
                                              UNITED STATES DISTRICT JUDGE